The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Deanna Lynn BOWLES, Defendant–
Appellant.

No. 07CA2503.

Colorado Court of Appeals,
Div. IV.

April 16, 2009.

John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Rebecca R. Freyre, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

*Brendlin v. California,* 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007), held that automobile passengers are seized and thus their Fourth Amendment rights attach during traffic stops. Whether a police officer violates a passenger's Fourth Amendment rights during an otherwise valid traffic stop by requesting the passenger to produce identification is the principal contention of defen-

dant, Deanna L. Bowles. After *Brendlin*, this issue is unresolved in Colorado.[1]

Although the officer had made such a request without particularized suspicion of Bowles, we discern no Fourth Amendment violation. We also reject her other contentions, and therefore affirm the judgment of conviction entered on a jury verdict finding her guilty of forgery, § 18–5–102(1)(e), C.R.S.2008, criminal impersonation, § 18–5–113(1)(e), C.R.S.2008, and false reporting to authorities, § 18–8–111(1)(d), C.R.S.2008.

## I. Introduction

Bowles was a passenger in a car driven by her ex-boyfriend ("driver"). An officer stopped the car for a cracked windshield, approached it, and asked the driver for his license, registration, and proof of insurance. When the officer also requested Bowles's identification, she responded that she "didn't have an I.D." The officer then asked for her name and date of birth. Bowles gave the name and birth date of a friend ("friend").

After checking both names from his patrol car, the officer returned to the car and gave the driver his documents. Then the officer sought and received his permission to search the car. Bowles and the driver exited the car and stood behind it with a second officer, who had arrived in the meantime.

On the front passenger floorboard, the first officer found a sunglass case containing a glass smoking pipe. When asked about ownership of the pipe, both Bowles and the driver said that it belonged to "Melissa," who was not otherwise identified. Believing that the pipe belonged to Bowles, the officer issued her a summons for possession of drug paraphernalia using the friend's name she had provided. Bowles signed the summons in the friend's name and, as directed by the officer, placed her fingerprint on the back of the summons.

The authorities later determined Bowles's true identity and charged her with several other offenses. Bowles moved to suppress

"all evidence" on Fourth Amendment grounds, which motion the trial court denied after holding a hearing. The jury acquitted Bowles of possessing drug paraphernalia but found her guilty on the remaining counts.

## II. Motion to Suppress

Bowles contends the trial court erred in denying her motion to suppress because it incorrectly held that a passenger's Fourth Amendment rights are not implicated by a traffic stop. Based on *Brendlin*, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132, which was announced after the suppression hearing, we analyze the issue differently than did the trial court, but discern no ground for reversal.

### A. Law

When reviewing a trial court's denial of a motion to suppress, we defer to its findings of fact but review its conclusions of law de novo. *People v. Haley*, 41 P.3d 666, 670 (Colo.2001).

■ The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Evidence obtained during an unreasonable seizure must be suppressed as fruit of the poisonous tree. *People v. Taylor*, 41 P.3d 681, 685 n. 4 (Colo.2002).

■ Not every encounter between police and citizens constitutes a seizure implicating Fourth Amendment protections. *Marujo*, 192 P.3d at 1005. Of the three general categories of such encounters—(1) arrests, (2) investigatory stops, and (3) consensual interviews—only the first and second are seizures. *Id.* at 1006; *People v. Johnson*, 865 P.2d 836, 842 (Colo.1994). Arrests must be justified by probable cause, while investigatory stops require only a reasonable suspicion of criminal activity. *Johnson*, 865 P.2d at 841–42 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

■ In contrast, consensual encounters, which often involve voluntary cooperation and non-coercive questioning, are not subject

---

1. Under prior Colorado law, a traffic stop did not constitute a seizure of passengers in the vehicle. *See People v. Jackson*, 39 P.3d 1174, 1185–86 (Colo.2002), *overruled in part by Brendlin*, 551 U.S. at ——, 127 S.Ct. 2400; *People v. Marujo*, 192 P.3d 1003, 1006 (Colo.2008) (recognizing *Brendlin's* abrogating *Jackson*).

to Fourth Amendment scrutiny. *Johnson,* 865 P.2d at 842–43; *People v. Thomas,* 839 P.2d 1174, 1177 (Colo.1992). An encounter is consensual if "a reasonable person under the circumstances would believe he or she was free to leave and/or disregard the official's request for information." *Marujo,* 192 P.3d at 1007 (quoting *Thomas,* 839 P.2d at 1177–78). An otherwise consensual police-citizen encounter does not become a seizure merely because the citizen may feel social pressure to cooperate. *People v. Coleman,* 55 P.3d 817, 819–20 (Colo.App.2002).

"Traffic stops are usually investigatory stops" requiring reasonable suspicion of criminal activity. *People v. Cervantes–Arredondo,* 17 P.3d 141, 147 (Colo.2001).

In *Brendlin,* the Supreme Court explained that "even when the wrongdoing is only bad driving, the passenger will expect to be subject to some scrutiny, and his attempt to leave the scene would be so obviously likely to prompt an objection from the officer that no passenger would feel free to leave in the first place." 551 U.S. at ——, 127 S.Ct. 2400. Consequently, the passenger may challenge the traffic stop and evidence obtained solely as a result of the stop.[2] *Brendlin,* 551 U.S. at ——, 127 S.Ct. 2400.

Our analysis is circumscribed by the parties' positions: Bowles does not dispute either the reasonable suspicion for the traffic stop or the validity of the driver's consent to the search; the Attorney General does not assert that either Bowles was implicated in the basis for the traffic stop or the officer had any individualized suspicion of her before discovering the pipe.

### B. Request by Police for Passenger Identification During a Traffic Stop is Permissible

■ Although under *Brendlin* Bowles was seized when she provided the false name, for the following two reasons we conclude that the officer lawfully could ask for her identification during the traffic stop without reason-

able suspicion of criminal activity on her part.

First, because *Brendlin* did not address any aspect of police-passenger interaction other than the initial traffic stop, it leaves intact earlier Supreme Court rulings that police may request identification without reasonable suspicion. *See, e.g., Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County,* 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004) ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment."); *Florida v. Bostick,* 501 U.S. 429, 434–35, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) ("[E]ven when officers have no basis for suspecting a particular individual, they may generally . . . ask to examine the individual's identification . . . ." (citations omitted)); *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) ("[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure.").

Although these cases address only requests for identification during consensual encounters rather than investigatory stops, federal circuit court holdings are not so restricted. *See, e.g., United States v. Rice,* 483 F.3d 1079, 1084 (10th Cir.2007) ("[A]n officer may ask for identification from passengers and run background checks on them as well."); *United States v. Rodriguez–Hernandez,* 353 F.3d 632, 635 (8th Cir.2003) ("[Officer] could ask the driver and passengers to produce identification."). These circuits had already held pre-*Brendlin* that a traffic stop constitutes a seizure of the passenger. *See Brendlin,* 551 U.S. at ——, 127 S.Ct. 2400.

Second, even if such a request for identification is minimally intrusive, it can easily be justified, as recognized in three post *Brendlin* decisions rejecting arguments like those raised by Bowles. *See United States v. Soriano–Jarquin,* 492 F.3d 495, 500 (4th Cir. 2007) ("If an officer may 'as a matter of course' and in the interest of personal safety

---

**2.** *Brendlin* leaves intact the rule that a passenger without a possessory interest in the vehicle or the property seized otherwise lacks standing to challenge a vehicle search. *See United States v. Cor-*

*tez–Galaviz,* 495 F.3d 1203, 1205 n. 3 (10th Cir. 2007); *United States v. Martinez,* 537 F.Supp.2d 1153, 1156 (D.Kan.2008).

order a passenger physically to exit the vehicle, [then] he may surely take the minimally intrusive step of requesting passenger identification." (quoting *Maryland v. Wilson*, 519 U.S. 408, 410, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997))), *cert. denied*, 552 U.S. 1189, 128 S.Ct. 1221, 170 L.Ed.2d 76 (2008); *United States v. Diaz–Castaneda*, 494 F.3d 1146, 1152–53 (9th Cir.2007) ("[P]olice may ask people who have legitimately been stopped for identification without conducting a [separate] Fourth Amendment search and seizure" to determine who the passengers are and whether any of them is capable of driving the car should the driver be arrested), *cert. denied*, 552 U.S. 1031, 128 S.Ct. 634, 169 L.Ed.2d 410 (2007); *People v. Harris*, 228 Ill.2d 222, 319 Ill.Dec. 823, 886 N.E.2d 947, 962 (2008) (Such a request "provid[es] a certain level of protection to both the officer and the driver of the vehicle" by "identify[ing] a potential witness to the traffic violation and to the officer's actions" during the stop).

Moreover, a passenger's response to such a request may be consensual, despite having been seized as a result of the traffic stop. *See Harris*, 319 Ill.Dec. 823, 886 N.E.2d at 963–64 (Fourth Amendment was not implicated because a reasonable passenger "would feel free to decline to provide his driver's license," "even upon realizing that the driver of the car in which he ha[d] been riding [was] about to be arrested," in that a request for identification is "facially innocuous" and does not cause the passenger "to feel intimidated or threatened."); *accord State v. Griffith*, 236 Wis.2d 48, 613 N.W.2d 72, 82 (2000) ("Passengers are free to refuse to provide identifying information, but if they are willing to provide it, obtaining such information serves the public interest."); *St. George v. State*, 197 S.W.3d 806, 819–20 (Tex.App.2006) ("[E]ven when they have no basis for reasonable suspicion, officers may ask questions of passengers and request identification, as long as the police do not convey a message that compliance with their requests is required" (internal quotations omitted)), *aff'd*, 237 S.W.3d 720 (Tex.Crim.App.2007).

■ Similarly, Colorado recognizes that a seized person may nevertheless consent to increased police involvement. *See People v. Reddersen*, 992 P.2d 1176, 1181–82 (Colo. 2000) (holding driver voluntarily consented to vehicle search while investigatory stop was ongoing).

On the facts presented, we are not persuaded otherwise by a minority of cases such as *State v. Morlock*, 40 Kan.App.2d 216, 190 P.3d 1002, 1013 (2008) ("[T]he seizure of a passenger for identification and a records check constitutes an unreasonable detention, in the absence of reasonable suspicion of criminal activity.") (collecting cases), *petition for review granted* January 22, 2009, and *State v. Affsprung*, 135 N.M. 306, 87 P.3d 1088, 1094 (Ct.App.2004) ("[A]n ordinary vehicle stop for a traffic violation ... in which the officer requests both the driver's and the passenger's identification in connection with the violation and [based on] nothing more than a generalized concern about officer safety is a seizure within the Fourth Amendment as to the passenger whose identification is obtained.").

In *Morlock*, the court emphasized that the officer asked the passenger questions which "were not reasonably related to the scope of the traffic stop and were designed solely to uncover suspicious activity," 190 P.3d at 1012, and that the officer seized the passenger's driver's license and ran a warrant check on both the driver and passenger, which "extended the duration of the traffic stop to at least some degree." *Id.* at 1014.

Here, the officer did not ask Bowles any questions beyond her name and date of birth. Bowles does not argue that running a warrants check on the fictitious name she provided, along with that of the driver, measurably prolonged the duration of the stop. *See Arizona v. Johnson*, —— U.S. ——, ——, 129 S.Ct. 781, 788, 172 L.Ed.2d 694 (2009) (unrelated police questioning permissible "so long as those inquiries do not measurably extend the duration of the stop.").

In *Affsprung*, the court emphasized that because police would not tolerate a passenger's refusal to provide identifying information, the passenger's compliance "does not turn the encounter into a consensual one." *Affsprung*, 87 P.3d at 1094. But Bowles does not point to any evidence beyond the traffic stop itself suggesting that her response to

the officer's request for identification was involuntary.

Therefore, we further conclude that Bowles provided the friend's name and birth date voluntarily.

### C. Bowles's Encounter After Police Received Permission To Search the Car was Consensual

■ We also reject Bowles's argument that the officers improperly prolonged the encounter by requiring her to step out of the car and remain at the scene, thereby creating a separate unlawful seizure which afforded the opportunity to require her to sign the summons after discovery of the glass pipe.

■■ A traffic stop must not last longer than is necessary to effectuate its purpose. *Cervantes–Arredondo*, 17 P.3d at 147. Once that purpose has been accomplished and no further reasonable suspicion exists to justify additional investigation, an officer may not further detain the driver or passengers of the vehicle. *People v. Redinger*, 906 P.2d 81, 85 (Colo.1995); *see also People v. Brandon*, 140 P.3d 15, 19 (Colo.App.2005) ("[O]nce [the driver's] paperwork was returned to her, there was no basis for the continued detention of the vehicle or its passengers. She and her passengers should have been allowed to go on their way."). Nevertheless, additional questioning is permissible if the initial detention becomes a consensual encounter. *Cervantes–Arredondo*, 17 P.3d at 147 ("The transition between a detention and a consensual exchange can be seamless.").

Here, Bowles was in the front seat of the car when the officer return the driver's documents and she heard the officer ask for the driver's consent to search. At that point, the initial seizure of Bowles under *Brendlin* ended. *See Martinez*, 537 F.Supp.2d at 1158.

■ Nevertheless, because Bowles testified that she felt compelled to remain at the scene during the search, we also consider other factors relevant to whether a reasonable person in her position would not have felt free to leave, including: (1) a display of authority through activating a patrol car siren or overhead lights; (2) the number officers present; (3) whether the officer approaches in a non-threatening manner; (4) whether the officer displays a weapon; (5) whether the officer requests or demands information; (6) whether the officer's tone of voice is conversational or indicates that compliance is mandatory; (7) whether the officer physically touches the person; (8) whether the officer impedes the person's ability to terminate the encounter; (9) the duration of the encounter; and (10) whether the officer retains the person's identification or travel documents. *Marujo*, 192 P.3d at 1007 (holding encounter between defendant and officer who initiated stop consensual).

The trial court found that only overhead lights, not a siren, were used throughout the encounter; the first officer did not demand, but rather asked in a conversational tone for identifying documents and permission to search the vehicle; after the officer returned the driver's documents and received his consent to the search, Bowles exited the vehicle without being asked or instructed by the officers to do so; a second officer arrived during the encounter, but neither officer ever drew his weapon; the encounter lasted approximately twenty minutes; and the officers did not impede Bowles's ability to terminate the encounter by walking away before they found the pipe.

Testimony by the officer who stopped the car supports these findings. To the extent that Bowles gave conflicting testimony, we must defer to the trial court's factual findings. *Haley*, 41 P.3d at 670.

Moreover, no testimony from Bowles or the officer suggests that either officer touched Bowles or retained anything that might have prevented her from leaving the scene as the car was being searched. *See People v. Fines*, 127 P.3d 79, 81 (Colo.2006) ("[A] reasonable [passenger] in the defendant's position would not feel free to simply walk away or ignore the officer['s] [request]" because officer remained in control of her purse).

Therefore, we further conclude that Bowles's continued presence after the traffic stop ended was consensual.

In sum, we discern no error in denial of the motion to suppress.

## III. Sufficiency of the Evidence

Bowles next contends the evidence was insufficient to prove criminal impersonation because the prosecution failed to show that she gave a false name to obtain an unlawful benefit. We conclude that her admissions of hoping to avoid arrest sufficiently support her criminal impersonation conviction beyond a reasonable doubt.

We review challenges to the sufficiency of the evidence to determine whether any rational trier of fact could accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. *People v. Sprouse*, 983 P.2d 771, 777 (Colo.1999).

As relevant here, criminal impersonation occurs when a person "knowingly assumes a false or fictitious identity or capacity, and in such identity or capacity ... (e) [d]oes any other act with intent to unlawfully gain a benefit for [the person] or another ...." § 18–5–113(1)–(1)(e), C.R.S.2008. Giving a false or fictitious name with the intent of avoiding arrest or prosecution establishes the requisite intent. *Alvarado v. People*, 132 P.3d 1205, 1208 (Colo.2006); *People v. Johnson*, 30 P.3d 718, 722 (Colo.App.2000).

Bowles testified on direct examination that she gave the officer her friend's name "[b]ecause I knew I had a failure to appear [warrant] and I didn't want to go to jail because my boyfriend—I didn't want him to find out I was hanging out with [the driver]." On cross-examination, she admitted that she believed giving the officer her friend's name would prevent her from going to jail. The prosecution also offered into evidence Bowles's letter to the friend, which stated, "When I was driving around with [the driver] and I wasn't supposed to be, we had got pulled over by the Wheat Ridge [police] and I already knew that I had an FTA [failure to appear] warrant and couldn't [sic] go to jail...."

## IV. Prosecutorial Misconduct in Opening Statement and Closing Argument

Bowles next contends prosecutorial misconduct during opening statement and closing argument violated her right to a fair trial and requires reversal. We discern no basis for reversal.

### A. Law

Where a defendant does not object to the prosecutor's statements, we review only for plain error. *People v. Cevallos–Acosta*, 140 P.3d 116, 122 (Colo.App. 2005). To constitute plain error, prosecutorial misconduct must be "flagrant or glaringly or tremendously improper" and so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Salyer*, 80 P.3d 831, 839 (Colo.App.2003). Prosecutorial misconduct in closing argument rarely constitutes plain error. *People v. Weinreich*, 98 P.3d 920, 924 (Colo.App.2004), *aff'd*, 119 P.3d 1073 (Colo.2005).

Where a defendant contemporaneously objects to allegedly improper argument that does not raise a constitutional issue, we review for harmless error. *Crider v. People*, 186 P.3d 39, 42 (Colo.2008). Error is harmless where no reasonable probability exists that it contributed to the defendant's conviction. *Id.*

A prosecution's opening statement should be limited to evidence that will be adduced at trial. *People v. Melanson*, 937 P.2d 826, 836 (Colo.App.1996). But remarks not supported by the evidence will constitute reversible error only on proof of bad faith and manifest prejudice. *People v. Wallace*, 97 P.3d 262, 269 (Colo.App.2004).

The scope of closing argument rests in the sound discretion of the trial court, whose rulings will not be disturbed on review absent a gross abuse of discretion resulting in prejudice and a denial of justice. *People v. Coria*, 937 P.2d 386, 391 (Colo. 1997). Although the prosecution may argue all reasonable inferences from the evidence in the record, it may not misstate or misinterpret the law. *Wallace*, 97 P.3d at 269.

The prosecution may also utilize rhetorical devices and engage in oratorical embellishment and metaphorical nuance, so long as doing so does not induce the jury to

determine guilt on the basis of passion or prejudice, inject irrelevant issues into the case, or accomplish some other improper purpose. *People v. Allee*, 77 P.3d 831, 837 (Colo.App.2003).

█ "[L]ack of an objection is a factor to be considered in examining the impact of a prosecutor's closing argument.... The lack of an objection may demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging." *People v. Rodriguez*, 794 P.2d 965, 972 (Colo.1990) (alteration in original).

In determining whether prosecutorial misconduct requires a new trial, an appellate court must evaluate the severity and frequency of the misconduct and the likelihood that the misconduct constituted a material factor leading to the defendant's conviction. *People v. Merchant*, 983 P.2d 108, 114 (Colo. App.1999).

Here, Bowles objected to the prosecutor's alleged misstatement of the law in rebuttal closing argument, but did not object to other statements that she now asserts require reversal. We reject her contentions as follows.

### B. Misstatement of the Law

█ During closing argument, Bowles urged the jury to acquit her on the forgery count because the absence of evidence that she disguised her handwriting when signing the summons or masked her fingerprint showed she did not act with "intent to defraud." § 18–5–102(1), C.R.S.2008. In rebuttal closing, the prosecutor said, "It is no defense and you won't see any in this [sic] that she didn't try to hide her signature or her fingerprints. That's not a defense to forgery."

Bowles objected on the basis that such conduct is a defense to forgery and that intent was an issue for the jury to decide. The trial court instructed the prosecutor to "argue where in the instructions it does [not] say that." The prosecutor then argued without objection, "You have the law. Where in the instructions does it say that if she didn't try ... to hide her signature and finger-

prints it's a defense to forgery. It's not there."

Because Bowles argued her failure to disguise her handwriting or mask her fingerprint, the prosecutor was entitled to comment on her theory of the case. *See People v. Perea*, 126 P.3d 241, 247 (Colo.App.2005) ("A prosecutor is afforded considerable latitude in replying to an argument by defense counsel." (internal quotations omitted)); *People v. Webster*, 987 P.2d 836, 842 (Colo. App.1998).

### C. Other Alleged Misconduct

In opening statement, the prosecutor told the jury, "With friends like the defendant, who needs enemies. This case is about the selfish act of the defendant who used the identity of a friend ... to try to get out of being arrested." The prosecutor made a similar "identity [theft]" statement during closing argument.

█ Although the prosecutor's references to "selfish," "enemies," and "identify [theft]" focused on Bowles's character and injected an irrelevant issue into the case, they were not so flagrantly improper as to warrant reversal for plain error. Because the evidence included Bowles's letter admitting that she had used her friend's name improperly, the prosecution was entitled to argue reasonable inferences to be drawn from the letter and their significance. *See Domingo–Gomez v. People*, 125 P.3d 1043, 1048 (Colo.2005).

█ In closing argument, the prosecutor said, "She will lie to get out of trouble. She did it with her boyfriend, she did it with the police, and because of it [her friend] is forever tied to the defendant and not in a good way."

█ "[T]here should be no question that it is improper ... for an attorney to characterize a witness's testimony or his character for truthfulness with any form of the word 'lie.'" *Crider*, 186 P.3d at 44. "The context in which challenged prosecutorial remarks are made is significant, including the nature of the alleged offenses and the asserted defenses, the issues to be determined, the evidence in the case, and the point in the proceedings at which the remarks

**1134**

were made." *Domingo–Gomez*, 125 P.3d at 1050.

Here, the prosecutor did not specifically assert that Bowles had testified falsely. As to her character for truthfulness, Bowles admitted having given the officer a false name. Further, this conduct was an element of both criminal impersonation and false reporting. For these reasons, we discern no plain error in the prosecutor's statement.

■ Finally, Bowles asserts that the prosecutor impermissibly referred to the charging decisions and shifted the burden of proof during rebuttal in arguing

Hold people accountable for what they did. You know, you get criticized for filing too many charges and now apparently we didn't file enough. Did she commit providing false information[?] Absolutely. Did we pile on[?] No. But since it's in front of you now, you've got to convict her of false—providing false information as well.

The defense in their arguments did not one time, not one time, explain how it is not criminal impersonation because clearly she assumed a false or fictitious identity. How was it not?

Because Bowles raised the prosecutor's charging decision in closing argument, the prosecutor was entitled to respond. *See Perea*, 126 P.3d at 247. Bowles does not explain how she was prejudiced by this single reference to the charging decision, and we discern none. Indeed, Bowles asked that the jury be instructed on false reporting as a lesser non-included offense. *See People v. Jones*, 990 P.2d 1098, 1108 (Colo.App.1999) (prosecutor's remark that trial court was required to give instruction on lesser non-included offense not improper where defendant requested it).

Nor did the prosecutor suggest that Bowles bore any burden to present evidence. The prosecutor's rebuttal merely commented on the weaknesses in Bowles's closing argument. *See Cevallos–Acosta*, 140 P.3d at 124 (prosecutor did not shift burden of proof by arguing, "Folks demand answers to those questions. Make them give you a link.... I don't think they can do that. They can't.... They have to give you something."); *People v. Esquivel–Alaniz*, 985 P.2d 22, 23–24 (Colo.

App.1999) (prosecutor's comment on lack of evidence confirming defendant's theory permissible and did not shift burden of proof). Further, the jury was correctly instructed on the prosecution's burden. *See Cevallos–Acosta*, 140 P.3d at 124.

Accordingly, we conclude the prosecutor's comments during opening statement and closing argument do not amount to plain error requiring reversal.

The order and judgment are affirmed.

Judge FURMAN and Judge RICHMAN concur.