The PEOPLE of the State Of Colorado, Plaintiff–Appellant,

v.

Lisa FINES, Defendant–Appellee.

No. 05SA258.

Supreme Court of Colorado, En Banc.

Jan. 23, 2006.

John R. Newsome, Fourth Judicial District Attorney, Frederick Stein, Deputy District Attorney, Doyle Baker, Deputy District Attorney, Cripple Creek, for Plaintiff–Appellant.

David S. Kaplan, Colorado State Public Defender, Kirk W. Waible, Deputy State Public Defender, Colorado Springs, for Defendant–Appellee.

COATS, Justice.

The People brought an interlocutory appeal, pursuant to section 16–12–102(2), C.R.S. (2005), and C.A.R. 4.1, challenging the trial court's suppression of evidence seized from the defendant's purse and statements she made to the police. Because the disputed evidence and statements were obtained through the exploitation of an unconstitutional seizure of the defendant, the trial court's order is affirmed.

I.

Following her arrest, Lisa Fines was charged with possession of methamphetamine, possession of marihuana, and possession of drug paraphernalia. She moved to suppress drugs and drug paraphernalia obtained from her purse and statements she made to the police on the day of her arrest, as the products of an illegal seizure of her person. After a hearing, at which the only witnesses were the arresting officer and the driver of the vehicle in which she had been riding, the trial court made written findings of fact and conclusions of law and granted the motion.

The trial court found that Ms. Fines was traveling as a passenger in a vehicle, which was stopped for a traffic infraction. After the driver consented to a search of the car, a sheriff's deputy asked Ms. Fines, whom he recognized as a drug user who had been in and out of jail, to step out. Although the court did not consider it necessary to determine whether the deputy actually laid hands on her, the court found it to be undisputed that he escorted her away from the stopped car. It was also undisputed that she was escorted to a particular location behind the stopped vehicle and in front of the first of two police cars, with overhead lights on. The trial court specifically noted that two deputies were present; that the deputies separated Ms. Fines from the driver; and that after escorting her from the car, one of the deputies questioned her about drug activity. The deputy testified that when she responded that she had rolling papers but no drugs, he requested consent to search her purse, which remained inside the car; and only after being told that the driver had already given consent to search the car did she reply, "Go ahead."

In its written order, the trial court concluded that upon being escorted from the vehicle and questioned about drug activity, as happened to the defendant in this case, a reasonable person would believe she was no longer free to leave; and therefore the defendant had, by that point, been subjected to an investigatory stop. In the absence of any suggestion of reasonable suspicion for a stop, or attenuation from any prior illegality, the

trial court further concluded that the defendant's consent and other statements were obtained during, and through the exploitation of, an illegal detention. It therefore suppressed all evidence gathered from the search of the defendant's purse, as well as all statements she made as a result of the detention.

The prosecution immediately filed an interlocutory appeal in this court.

## II.

Statements given during an illegal detention, even though voluntary, are inadmissible if they were the product of the illegality and not the result of an independent act of free will. *Florida v. Royer*, 460 U.S. 491, 507–08, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Where a defendant's consent to search is obtained following her illegal detention, a subsequent search can therefore be justified by her consent alone only if it was sufficiently attenuated from the initial illegality. *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *People v. Rodriguez*, 945 P.2d 1351, 1364 (Colo. 1997). The prosecution has not suggested, either at the suppression hearing or on appeal, any grounds for detaining the defendant or any basis upon which to find attenuation. It assigns error solely to the trial court's determination that the defendant was seized within the meaning of the Fourth Amendment, prior to giving consent.

An encounter between police officers and a citizen has ceased to be consensual, and the citizen has been seized within the meaning of the Fourth Amendment when, in the totality of the circumstances, a reasonable person in the citizen's position would no longer feel free to leave or to disregard the officers' requests. *See People v. Jackson*, 39 P.3d 1174, 1179 (Colo.2002). We have previously noted that this standard presumes an innocent person, *id.*, and that the obligation to comply must be greater than the obligation a citizen would normally feel to cooperate with the police. *People v. Johnson*, 865 P.2d 836, 842 (Colo.1994). It is also clear that a passenger is not seized within the meaning of the Fourth Amendment merely because the vehicle in which she is riding is subjected to a traffic stop, *see Jackson*, 39 P.3d at 1185, nor does her removal from the car for safety reasons, without particularized suspicion, amount to an illegal seizure of her person. *Maryland v. Wilson*, 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

We have never suggested, however, that infringement on the liberty of a passenger, beyond that necessarily required for a safe investigatory stop of the driver or search of the vehicle, is also justified without particularized suspicion. Nor have we suggested that the extent of police infringement on a passenger's liberty must be evaluated without considering the circumstances of the initial traffic stop. On the contrary, we have indicated merely that it would not be reasonable for a passenger to feel the requisite infringement on her freedom of action from a traffic stop of the driver alone. *Jackson*, 39 P.3d at 1185–86. The same cannot necessarily be said, however, of further police direction or control of the passenger, after her removal from the stopped vehicle.

The trial court made clear its understanding of the appropriate legal standard governing the seizure of persons and its awareness that a passenger is not seized within the meaning of the Fourth Amendment by a traffic stop or by her removal from the vehicle. It found that the defendant was stopped only when she was, in addition, directed by the police to a particular location, separated from the driver, and questioned about her own possession of illegal drugs. At least where the police remained in control of her purse, without offer of return, *see id.* at 1190 (holding that a reasonable person, under the totality of the circumstances, would not feel free to leave or otherwise terminate an encounter where officers retained his identification and directed him to remain in a stopped car), a reasonable person in the defendant's position would not feel free to simply walk away or ignore the officer.

## III.

Because the defendant had been seized in violation of the Fourth Amendment at the time of her consent to search and other statements, without any suggestion of attenu-

ation from the initial illegality, the trial court's suppression order is affirmed.