The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

Salvador MARUJO, Defendant–Appellee.

No. 08SA114.

Supreme Court of Colorado,
En Banc.

Sept. 22, 2008.

Carol Chambers, District Attorney, Eighteenth Judicial District, Andrew Cooper, Senior Deputy District Attorney, Centennial, Colorado, Attorney for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Stephen B. McCrohan, Deputy State Public Defender, Centennial, Colorado, Attorneys for Defendant–Appellee.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

The People bring this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), C.R.S. (2008), seeking to reverse the trial court's ruling suppressing statements made by the defendant and the cocaine discovered in his pockets. Defendant Salvador Marujo was charged with possession of a controlled substance after cocaine was discovered on his person. The cocaine was discovered when, in the course of investigating a potential illegal gun purchase, a police officer requested Marujo's consent to conduct a pat down search. The trial court credited the arresting officer's account. He testified: "I walked up to him and asked him if he would mind stepping over to me, which he did. I asked for his consent to pat him down ... [a]nd he gave his consent at that time."

As the pat down search began, Marujo told the officer that he had cocaine in his pocket. The officer located the cocaine and placed Marujo under arrest. The trial court suppressed the statements Marujo made to the officer and the evidence discovered on his person because the court concluded that under these facts Marujo was "seized" for Fourth Amendment purposes, and the seizure was not justified by reasonable suspicion of criminal activity.

However, we conclude that Marujo was not "seized" at the time of the encounter. We hold that the encounter between Officer Hinton and Marujo was a consensual encounter and not an investigatory stop, and therefore, no reasonable suspicion was required to justify the encounter. We reverse the trial court's order granting Marujo's motion to suppress evidence and remand the case to the trial court for proceedings consistent with this opinion.

## II. Facts and Proceedings Below

Two Aurora police officers responded to a call at a gun store. A person named "Ramirez," who had an outstanding arrest warrant for a traffic offense, was trying to buy a gun. The officers arrived in a single patrol car and did not activate the lights or sirens. When they arrived, they saw a Hispanic man standing outside the gun store talking on a cell phone. One officer asked this man if he was "Ramirez." The man said that he was not, but that Ramirez was his friend and was inside the gun store.

The officers went inside the gun store and confirmed that the man in the store was

Francisco Ramirez, the subject of the arrest warrant. They placed Ramirez under arrest and performed a search of his person, which revealed a package of cocaine and $500 in cash. In the process, they noticed several gang-related tattoos. Ramirez confirmed that he was a member of a gang. Ramirez also told the officers that he knew the man standing outside, and that they had come to the store together. At this point, one officer suspected that the man outside might be the principal in an illegal "straw man" gun purchase.

One officer, Officer Hinton, went back outside the store and approached defendant Marujo, the man he had spoken to earlier. It is this encounter that is the focus of this appeal. In his arrest affidavit, Officer Hinton stated that he "contacted Marujo in front of the store and asked for consent to pat down Marujo for weapons." In the suppression hearing, the officer testified that he asked Marujo to step toward him and requested consent to search him:

> At that time I walked up to him, and asked him if he would mind stepping over to me, which he did. I asked for his consent to pat him down, meaning, I would have said, Would you mind if I pat you down for weapons or drugs? And he gave his consent at that time.

On cross examination, the officer testified that he asked Marujo, "Sir, would you mind stepping over here? Do you have any weapons on your person? Would you mind if I patted you down to check for weapons?" Officer Hinton testified that Marujo complied with his request to step toward him, and responded to his request to pat him down by saying "yes."

Before he began the pat down, Officer Hinton asked Marujo if there was "anything I need to know about" in his pockets. Marujo told the officer that he had cocaine in his pocket. The officer located the cocaine in Marujo's shirt pocket, then handcuffed him and placed him under arrest.

Marujo was charged with possession of a controlled substance. He moved to suppress the statements he made to Officer Hinton as well as the cocaine discovered in his pocket on the grounds that they were obtained through an investigatory stop that was not supported by reasonable suspicion that he was involved in criminal activity.

After taking evidence and hearing arguments on Marujo's motion to suppress evidence, the trial court ruled that the encounter between Officer Hinton and Marujo was not consensual because a reasonable person in his position would not have felt free to leave or to disregard the officer's request. The trial court relied on the following facts in making this determination: (1) Marujo was approached by a uniformed, armed police officer and was aware that a second officer was inside the store; (2) Officer Hinton asked Marujo to change his location by stepping toward him; (3) Officer Hinton requested to perform a pat down with no legitimate reason to interview Marujo; (4) Marujo consented to the pat down with full knowledge that it would reveal the illegal drugs in his pocket; and (5) Marujo is not a native English speaker, and while he is conversant in English, he requires interpretive assistance with technical legal issues. Relying heavily on our opinion in *People v. Fines*, the court reasoned that the encounter rose to the level of an investigatory stop. *See* 127 P.3d 79 (Colo.2006) (holding that a passenger in a stopped vehicle was seized when she was escorted from the car to the front of two police cars that had their overhead lights turned on, separated from the driver by two officers, and separated from her purse which remained in the car). The trial court held that the stop was not justified by reasonable suspicion and granted Marujo's motion to suppress his statements and the evidence seized from him.

On appeal, the People challenge this ruling on the grounds that the encounter between Officer Hinton and Marujo was consensual.

## III. Analysis

 Not every encounter between police and citizens implicates Fourth Amendment concerns because a "seizure" does not occur until a police officer has restrained the liberty of the citizen. *See People v. Johnson*, 865 P.2d 836, 841 (Colo.1994) (citing *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20

L.Ed.2d 889 (1968)). We have previously explained that Colorado case law recognizes three general categories of police-citizen encounters: (1) arrest, (2) investigatory stop, and (3) consensual interview. *Johnson*, 865 P.2d at 842. Arrests and investigatory stops are seizures and thus implicate the Fourth Amendment. *People v. Jackson*, 39 P.3d 1174, 1179 (Colo.2002), *abrogated in part on other grounds by Brendlin v. California*, ——— U.S. ———, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Consensual encounters are not seizures; they are requests for "voluntary cooperation" and do not implicate the Fourth Amendment. *Jackson*, 39 P.3d at 1179. We have observed that "the boundary between consensual encounters and investigatory stops is crucial because it defines where the protection of the Fourth Amendment begins." *Id.*

We begin our analysis by reviewing the precedent from the United States Supreme Court and this court that describe the differences between consensual encounters and investigatory stops. With this framework in mind, we then consider whether the encounter between Officer Hinton and Marujo rose to the level of an investigatory stop, or whether the encounter was consensual. We ultimately conclude that the encounter was consensual.

 United States Supreme Court case law establishes that the key question in determining whether a person has been "seized" is whether, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (no seizure occurred where officers approached defendant in the public area of airport and requested, but did not demand, to see his identification and ticket); *see also Florida v. Royer*, 460 U.S. 491, 501–02, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (consensual encounter in an airport became seizure when officers requested, but did not return, defendant's ticket and identification, moved him to a police interro-

gation room, and seized his luggage without his consent).[1] In other words, a court must consider whether "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (no seizure where two officers approached defendant a on bus, asked him questions, requested his identification, and asked for consent to search his luggage). This test presupposes an innocent person. *Id.* at 438, 111 S.Ct. 2382. The subjective intent of the officer in initiating the encounter is not relevant for Fourth Amendment purposes. *Whren v. United States*, 517 U.S. 806, 813–14, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (motivations of officers making traffic stop were irrelevant where there was legal justification for the stop).

Examples of circumstances that would lead a reasonable person to feel that he was not free to leave or terminate the encounter include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554, 100 S.Ct. 1870; *see also* 4 Wayne R. La Fave, *Search & Seizure: A Treatise on the Fourth Amendment* § 9.4(a), at 427–31 (4th ed.2004) (listing cases citing additional factors, including pursuing a person who has attempted to end the contact, calling a person to a halt, blocking a person's path, and encircling a suspect with many officers).

 A request for consent to search does not transform a consensual encounter into a seizure so long as the officer does not "convey a message that compliance with [the request] is required." *Bostick*, 501 U.S. at 435, 111 S.Ct. 2382. Also, requesting that a person move a short distance does not constitute a seizure. *See Florida v. Rodriguez*, 469 U.S. 1, 4–6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984) (in a case where a person in an airport was asked to move approximately 15 feet, "[t]he initial contact between the officers and respondent, where they simply asked if he

---

1. *See also* 4 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 9.4(a), at 412 (4th ed.2004) (noting that the *Mendenhall–*

*Royer* standard commands a majority of the court).

would step aside and talk with them, was clearly the sort of consensual encounter that implicates no Fourth Amendment interest").

■ Colorado case law mirrors Supreme Court precedent. In a consensual encounter, "a police officer seeks the voluntary cooperation of an individual by asking non-coercive questions." *People v. Melton*, 910 P.2d 672, 676 (Colo.1996) (no seizure where three officers drove up to a yard in patrol cars and asked defendant for his name and whether he lived in that house). An encounter ceases to be consensual, and a person is "seized," when "in the totality of the circumstances, a reasonable person in the citizen's position would no longer feel free to leave or to disregard the officers' request." *People v. Fines*, 127 P.3d 79, 81 (Colo.2006) (defendant was seized when she was asked to leave the car, "escorted" to another location, separated from the driver, and separated from her purse and identification). In *People v. Thomas*, we defined a "consensual encounter" as voluntary cooperation with non-coercive questioning during which the individual is free to leave:

A consensual encounter consists of the voluntary cooperation of an individual to the non-coercive questioning by an officer. The individual is free to leave at any time during such an encounter, and, therefore, he is not "seized" within the meaning of the Fourth Amendment. The test for determining if the encounter is a consensual one is whether a reasonable person under the circumstances would believe he or she was free to leave and/or to disregard the official's request for information.

839 P.2d 1174, 1177–78 (Colo.1992) (citations omitted)(defendant was not seized when, following citation for traffic infraction, officer informed him he was free to leave but requested that he answer some questions). We have also held that the subjective motivations of police officers for initiating contact are not relevant for Fourth Amendment analysis: "the objective standard makes it unnecessary to engage in a subjective analysis of police officers' motives for their otherwise lawful conduct." *People v. Hill*, 929 P.2d 735, 740 (Colo.1996) (where an officer had justification to search a vehicle based on an open container violation, it did not matter if his true motive was to search for illegal drugs).

■ This court has enumerated a list of factors that may demonstrate that "a reasonable, innocent person would not feel free to decline the officers' requests or otherwise terminate the encounter." *Jackson*, 39 P.3d at 1184. The factors include but are not limited to:

(1) whether there is a display of authority or control over the defendant by activating the siren or any patrol car overhead lights;

(2) the number of officers present;

(3) whether the officer approaches in a non-threatening manner;

(4) whether the officer displays a weapon;

(5) whether the officer requests or demands information;

(6) whether the officer's tone of voice is conversational or whether it indicates that compliance with the request for information might be compelled;

(7) whether the officer physically touches the person of the citizen;

(8) whether an officer's show of authority or exercise of control over an individual impedes that individual's ability to terminate the encounter;

(9) the duration of the encounter; and

(10) whether the officer retains the citizen's identification or travel documents.

*Id.* For a police-citizen encounter to rise to the level of a seizure, the obligation to comply must be greater than the obligation an innocent citizen would normally feel to cooperate with the police. *Johnson*, 865 P.2d at 842–43.

### IV. Application

■ Marujo argues that the facts of this case establish that a reasonable person would not have felt free to leave or to disregard Officer Hinton's requests to step toward him and to submit to a pat down search. Initially, two armed, uniformed police officers approached him outside the store. He knew that his friend had been arrested, searched, and questioned inside the store. He argues that he admitted to possessing cocaine but only after the officer began to control him physically for the pat down search. And finally, he claims that he experienced discomfort arising from a language barrier. In these circumstances, Marujo argues that a

reasonable person would not have felt free to terminate the encounter.

██ We disagree. The factors that we have used to determine that an encounter was not consensual are not present. There was a single patrol car in the vicinity which did not have its lights or sirens activated, in contrast with *Fines,* where two patrol cars were present with lights flashing. *See* 127 P.3d at 80. A single officer was present, while the second officer remained inside the gun store. Officer Hinton did not draw a weapon. He requested, but did not demand, that the Marujo step toward him. He asked, but did not order, Marujo to submit to a pat down. There is no testimony that he used a threatening tone of voice. Marujo was not separated from his identification or personal belongings, unlike the defendants in *Fines* and *Royer.* *Fines,* 127 P.3d at 80; *Royer,* 460 U.S. at 494, 103 S.Ct. 1319. The encounter lasted no more than a few minutes, which is comparable to the consensual encounter in *Melton,* 910 P.2d at 677. While a citizen may feel instinctive pressure to cooperate with police officers, without an additional display of force or authority by the officer, this pressure does not suffice to transform a consensual encounter into a seizure. *See id.* at 678 ("[W]e have noted that a police-citizen encounter does not become a seizure simply because citizens may feel an inherent social pressure to cooperate with the police.").

The trial court relied on our opinion in *Fines,* 127 P.3d 79. While that case provides the proper legal framework for analyzing the issue, the facts are not analogous to this case. Here, there were no lights or sirens, only a single officer was present, and the defendant was not separated from his identification or other belongings.

With regard to Marujo's contention that a potential language barrier should be considered in the totality of the circumstances, we decline to consider this as a factor in this case because Marujo did not introduce evidence that this language or cultural barrier actually existed. We recognize that Marujo relied on a translator during court proceedings for technical legal discussions. However, Marujo states in his brief that he "likely had discomfort" relating to the language barrier. The trial court noted only a "potential discomfort." These assertions are not suffi-cient to establish that a language barrier existed during the encounter with Officer Hinton. Thus, we do not need to decide in this case whether a language or cultural barrier may be a consideration relevant to the question of whether a reasonable person in the defendant's circumstances would feel free to leave or to terminate the encounter.

In sum, while we recognize that most citizens will feel some pressure to cooperate with police requests, this does not eliminate the consensual nature of that cooperation in the absence of additional factors such as those enumerated in *Jackson.* Those factors are absent in this case. Thus, we hold that the encounter between Officer Hinton and Marujo was a consensual encounter and not an investigatory stop; no reasonable suspicion was required to justify the encounter.

## V. Conclusion

For the reasons stated, we reverse the trial court's order granting Marujo's motion to suppress and remand the case to the trial court for proceedings consistent with this opinion.