The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

Ronnie Lee WALTERS, Defendant–
Appellee.

No. 10SA347.

Supreme Court of Colorado,
En Banc.

April 18, 2011.

Don Quick, District Attorney, Seventeenth Judicial District Russell Wentworth, Deputy District Attorney, Brighton, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Public Defender, Todd L. Nelson, Deputy Public Defender, Brighton, Colorado, Attorneys for Defendant–Appellee.

Chief Justice BENDER delivered the Opinion of the Court.

## I. Introduction

The prosecution brings this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), C.R.S. (2010), seeking to reverse the trial court's ruling suppressing evidence and statements obtained by police officers in connection with the defendant's arrest for possession of and intent to distribute a controlled substance. The trial court ordered the suppression of evidence obtained during the search of the defendant's vehicle because "the pretextual nature of the arrest made the subsequent search of defendant's vehicle constitutionally impermissible," and the arresting officer failed to develop an independent, reasonable basis to stop and search the defendant. We reverse.

In this case, the defendant parked, exited the vehicle, and raised the vehicle's hood. The arresting officer, Officer Portillo, then approached the defendant after Officer Portillo had gained information from his patrol sergeant that the defendant likely had nar-

cotics in the vehicle. Officer Portillo approached the defendant in a non-threatening manner and asked him if he was having car trouble and needed assistance. Using a conversational tone of voice, Officer Portillo asked, but did not order, the defendant to submit to a pat down and to the search of his vehicle. During the search of the vehicle, Officer Portillo found a plastic baggie containing methamphetamine.

Under these circumstances, we conclude that the police did not subject the defendant to an investigatory stop. We hold that the encounter between Officer Portillo and the defendant was a consensual encounter during which the defendant consented to the search of his vehicle. Therefore, we reverse the trial court's order granting the defendant's motion to suppress evidence and statements and remand the case to the trial court for proceedings consistent with this opinion.

## II. Facts and Procedural History

The defendant, Ronnie Lee Walters, is charged with possession with intent to distribute a controlled substance, section 18–18–405(1), (2)(a)(I)(A), C.R.S. (2010). In a pretrial motion, the defendant sought to suppress evidence obtained by the arresting officer during a search of the defendant's vehicle and statements made by the defendant after police arrested him. As grounds for this motion, he alleged that the search of his vehicle violated the Fourth Amendment because Officer Portillo lacked reasonable suspicion to stop his vehicle and because the officer's grounds for stopping the defendant were pretextual. The defendant also asserted that his statements should be suppressed as fruit of this illegal search.

At the suppression hearing, Detective Soustek of the Brighton Police Department, currently detailed with the North Metro Task Force, testified that the afternoon of the defendant's arrest he had spoken with a confidential informant who said that he had bought methamphetamine from the defendant. The informant volunteered to call the defendant and have him deliver a quarter-

ounce of the drug to the informant at the parking lot of the Kmart in Brighton. After the informant called the defendant and set up the buy, Detective Soustek advised the on-duty patrol sergeant, Sergeant DeVries, of the arranged buy, its location, and the defendant's vehicle information and asked that Sergeant DeVries relay the information to a patrol officer.

The responding patrol officer, Officer Portillo, testified that he received a report from Sgt. DeVries that an officer with the North Metro Task Force had provided information "that a vehicle was coming into the area of the Kmart [in Brighton] with narcotics in the vehicle," and he gave Officer Portillo a description and the license plate number of the vehicle the defendant normally drives. Sgt. DeVries asked Officer Portillo to try to stop the vehicle and gain consent to search.

Officer Portillo testified that, when he entered the Kmart parking lot, he saw the defendant's car parked with its hood up, and the defendant was out of the vehicle. Officer Portillo then approached the defendant on foot, introduced himself, and "asked him what he was doing, [and] if he needed assistance." The defendant told Officer Portillo that the motor oil in the vehicle was low, but the dip stick the defendant presented to the officer showed that the oil level was fine. While speaking to the defendant, Officer Portillo noticed that the defendant was "extremely nervous," was speaking too fast, and had a trembling voice. Officer Portillo asked the defendant why he was nervous, and the defendant answered that he was on probation and did not want any trouble. In response, Officer Portillo asked the defendant if he could perform a pat down for weapons, and the defendant agreed. During the pat down, Officer Portillo felt a hard object in one of the defendant's pockets and asked the defendant what the object was and if he could take it out of the defendant's pocket. The defendant agreed, and Officer Portillo pulled out a large roll of money, containing one hundred and fifty dollar bills.[1] Officer Portillo then asked the defendant "if there was anything

---

1. Although Officer Portillo did not testify to this fact, the Warrantless Arrest Affidavit he executed after he arrested the defendant states that after

Officer Portillo pulled out the roll of money, he put the money back into the defendant's pocket.

illegal in his pickup and if he cared if [Officer Portillo] searched his pickup." The defendant agreed to the search and told the officer to "[g]o ahead" because he did not want any trouble or to go to jail. During the search, Officer Portillo found a plastic baggie containing methamphetamine in between seat cushions of the passenger seat.

Officer Portillo also testified that, during the course of his contact with the defendant, he used a conversational tone of voice, spoke to the defendant from five to ten feet away, never reached for or gestured toward his weapon, never made any threats or promises to the defendant, and never told the defendant that he was not free to leave or that he was required to consent to the search of his vehicle. He stated that Sgt. DeVries came to the scene during Officer Portillo's encounter with the defendant but that Sgt. DeVries did not intervene in the encounter but was standing to the side and observing.

After the suppression hearing, the trial court granted in its entirety the defendant's motion to suppress evidence and statements. Doing so, the trial court relied on *People v. Arias*, 159 P.3d 134 (Colo.2007), and *People v. Hauseman*, 900 P.2d 74 (Colo.1995). The trial court ruled that, although the defendant consented to the search of his vehicle, "such evidence must be suppressed on the ground that 'the pretextual nature of the arrest made the subsequent search of defendant's vehicle constitutionally impermissible.'" (quoting *Hauseman*, 900 P.2d at 78). It reasoned that Officer Portillo "had no independent probable cause to either stop or detain the [d]efendant when he located him outside his truck in a parking lot" and "'failed to articulate a reasonable basis to' search [d]efendant," therefore making the search illegal. (quoting *Arias*, 159 P.3d at 138).

The prosecution then filed this interlocutory appeal.[2]

## III. Analysis

On appeal, the prosecution challenges the trial court's suppression of evidence obtained during the search of the defendant's vehicle and statements made by the defendant after police arrested him. We address each issue in turn.

### A. Vehicle Search

■ We begin by considering whether Officer Portillo violated the defendant's Fourth Amendment rights when he initiated contact with the defendant and searched the defendant's vehicle. On appeal, the prosecution argues that the interaction between Officer Portillo and the defendant was not an investigatory stop but a consensual encounter and that the defendant willingly consented to the search of his vehicle. Supporting the trial court's ruling, the defendant asserts that Officer Portillo performed an investigatory stop when he initiated contact with the defendant and that the officer did not have reasonable suspicion to stop the defendant but did so as pretext to gain consent to search the defendant's vehicle.

■ Not every encounter between police and citizens implicates Fourth Amendment concerns because a "seizure" does not occur until a police officer has restrained the liberty of the citizen. *People v. Marujo*, 192 P.3d 1003, 1005 (Colo.2008). Colorado law recognizes three types of police-citizen contacts: arrests, investigatory stops, and consensual encounters. *People v. Martinez*, 200 P.3d 1053, 1056 (Colo.2009). Each of these categories requires "varying levels of justification and protection." *People v. Cascio*, 932 P.2d 1381, 1385 (Colo.1997). Because the defendant does not argue that his encounter with Officer Portillo constituted an arrest, we

---

2. The prosecution presented three issues for our review:

    (1) Whether the police may contact the driver of a vehicle that is already stopped and out of his vehicle without invoking Fourth Amendment protection against unreasonable seizures.

    (2) Whether the police may request and obtain consent to search a vehicle after a consensual encounter with the driver of a parked vehicle without invoking Fourth Amendment protection against unreasonable searches and seizures.

    (3) Whether the police may interrogate or converse with a suspect without invoking Fifth Amendment protection when the suspect is either not in custody or has waived his Fifth Amendment rights.

distinguish only between investigatory stops and consensual encounters.

While an investigatory stop constitutes a seizure implicating the Fourth Amendment's safeguards, and therefore must be justified by reasonable suspicion, a consensual encounter does not. *Id.* A consensual encounter is one "in which no restraint of the liberty of the citizen is implicated, but the voluntary cooperation of the citizen is elicited through non-coercive questioning." *People v. Johnson*, 865 P.2d 836, 842 (Colo.1994). The test for determining if the encounter is a consensual one is "whether a reasonable person under the circumstances would believe he or she was free to leave and/or to disregard the official's request for information." *People v. Thomas*, 839 P.2d 1174, 1177–78 (Colo.1992). This test " 'presupposes an innocent person.' " *Johnson*, 865 P.2d at 842 (quoting *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). Moreover, the subjective intent of the officer in initiating the contact is not relevant for Fourth Amendment purposes. *Marujo*, 192 P.3d at 1006 (citing *Whren v. United States*, 517 U.S. 806, 813–14, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). "In fact, in most cases regarding consensual encounters the police approach individuals because they have suspicions about them." *People v. Melton*, 910 P.2d 672, 677 (Colo.1996); *accord Bostick*, 501 U.S. at 431, 111 S.Ct. 2382, 115 L.Ed.2d 389 (noting that police often approach individuals randomly or because they suspect that the person is engaged in criminal activity).

Simply because a law enforcement officer approaches an individual on a street or in a public place and identifies himself as a police officer does not convert the encounter into an investigatory stop. *People v. Hill*, 929 P.2d 735, 738 (Colo.1996). Nor does the "inherent social pressure to cooperate with the police" elevate the encounter into a seizure. *Cascio*, 932 P.2d at 1386. Only if the "circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would believe he is not free to leave if he does not respond" does the police questioning result in a seizure under the Fourth Amendment. *Hill*, 929 P.2d at 738. Factors this court has enumerated that may indicate a seizure include, but are not limited to, the following:

(1) whether there is a display of authority or control over the defendant by activating the siren or any patrol car overhead lights;

(2) the number of officers present;

(3) whether the officer approaches in a non-threatening manner;

(4) whether the officer displays a weapon;

(5) whether the officer requests or demands information;

(6) whether the officer's tone of voice is conversational or whether it indicates that compliance with the request for information might be compelled;

(7) whether the officer physically touches the person of the citizen;

(8) whether the officer's show of authority or exercise of control over an individual impedes that individual's ability to terminate the encounter;

(9) the duration of the encounter; and

(10) whether the officer retains the citizen's identification or travel documents.

*Marujo*, 192 P.3d at 1007 (citing *People v. Jackson*, 39 P.3d 1174, 1184 (Colo.2002), *abrogated in part on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007)).

In general, "there can be no question that the stopping of a vehicle and the detention of its occupants constitute a seizure within the meaning of the Fourth Amendment." *Cascio*, 932 P.2d at 1385 (citing *Colorado v. Bannister*, 449 U.S. 1, 4 n. 3, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980)). However, this court has held that when a police officer does not pull over a vehicle, but approaches an individual in a vehicle that is already parked, the encounter does not automatically constitute an investigatory stop. *Id.* at 1387–88; *see Hill*, 929 P.2d at 737, 739. Under those circumstances, this court has applied the general test for determining if an encounter is consensual, whether "the circumstances of th[e] encounter ... [were] so intimidating as to demonstrate that a reasonable person would have believed he was not

free to leave." *Hill*, 929 P.2d at 739; *accord Cascio*, 932 P.2d at 1387–88.

A request for consent to search does not transform a consensual encounter into a seizure so long as the officer does not "convey a message that compliance with [the request] is required." *Marujo*, 192 P.3d at 1006 (citing *Bostick*, 501 U.S. at 435, 111 S.Ct. 2382, 115 L.Ed.2d 389). The encounter does not rise to the level of a seizure "unless it loses its consensual nature." *Bostick*, 501 U.S. at 434, 111 S.Ct. 2382, 115 L.Ed.2d 389. For the encounter to rise to the level of a seizure, "the obligation to comply must be greater than the obligation an innocent citizen would normally feel to cooperate with the police." *Marujo*, 192 P.3d at 1007.

In this case, the record facts show that the encounter between Officer Portillo and the defendant, including the request to search the defendant's vehicle, was not an investigatory stop but a consensual encounter.

Officer Portillo did not pull over the defendant's vehicle but initiated contact after the defendant had already parked, exited the vehicle, and raised its hood. Therefore, the contact between Officer Portillo and the defendant did not automatically rise to the level of an investigatory stop, and, hence, we must determine whether the encounter was "so intimidating as to demonstrate that a reasonable person would believe he was not free to leave." *Hill*, 929 P.2d at 739.

Although Officer Portillo initiated contact with the defendant because he suspected him of having drugs in his vehicle, the subjective intent of the officer in initiating the contact is not relevant for Fourth Amendment purposes. *Marujo*, 192 P.3d at 1006 (citing *Whren*, 517 U.S. at 813–14, 116 S.Ct. 1769).

When Officer Portillo contacted the defendant in the Kmart parking lot, he did not activate his patrol car's lights or sirens. Officer Portillo approached the defendant in a nonthreatening manner by asking him if he was having car trouble and needed assistance. Throughout the encounter, Officer Portillo used a conversational tone of voice, stood five to ten feet away from the defendant, and did not display or gesture toward his weapon. Officer Portillo did not take the defendant's identification card. Although a second officer arrived during the encounter, that officer stood off to the side and did not intervene in the encounter.

Furthermore, Officer Portillo asked, but did not order, the defendant to submit to a pat down and to the search of his vehicle. Officer Portillo never made a display of force or authority that would indicate that the obligation to comply was greater than the obligation an innocent citizen would normally feel to cooperate with the police.

Under these circumstances, Officer Portillo's conduct was not so intimidating as to demonstrate that a reasonable person would believe that he was not free to leave if he did not respond. *Hill*, 929 P.2d at 737–39. Rather, Officer Portillo elicited the defendant's voluntary cooperation through noncoercive questioning. *Johnson*, 865 P.2d at 842.

Accordingly, we reverse the trial court's suppression of the evidence found during the search of the defendant's vehicle.

### B. Incriminating Statements

The prosecution also appeals the trial court's suppression of statements given to the police by the defendant. In its suppression order, the trial court addressed only the issue of whether the search of the defendant's vehicle violated the Fourth Amendment. It granted the defendant's motion to suppress evidence and statements in its entirety, thereby suppressing all statements made by the defendant after the search of his vehicle. The prosecution argues that the trial court erred when it suppressed the defendant's statements because the search of the defendant's vehicle was a valid consensual search and because he voluntarily waived his *Miranda* rights when Detective Soustek questioned him after his arrest. Supporting the trial court's ruling, the defendant asserts that the illegal nature of the stop and search of the defendant renders any subsequent statements also inadmissible as "fruit of the poisonous tree."

Evidence obtained as a direct result of an illegal search or seizure is inadmissible. *People v. Rodriguez*, 945 P.2d 1351, 1363 (Colo.1997) (citing *Wong Sun v. United*

*States,* 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (articulation of the "fruit of the poisonous tree doctrine")). However, because we have concluded that the search of the defendant's vehicle was not illegal, the defendant's statements cannot constitute fruit of the poisonous tree. Consequently, we reverse the trial court's suppression of the defendant's statements on this basis.

## IV. Conclusion

For the reasons stated above, we conclude that the trial court erred in granting the defendant's motion to suppress evidence and statements and remand the case to the trial court for proceedings consistent with this opinion.