Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 30, 2018

**2018 CO 35**

**No. 17SA110, People v. Taylor, — Arrest — Seizure — Suppression.**

Pursuant to C.A.R. 4.1, the People challenge an order of the district court granting Taylor's motion to suppress drug evidence.  The supreme court holds that the district court erred in granting Taylor's motion to suppress because when Taylor dropped the drugs, no seizure had yet taken place.  The supreme court reverses the suppression order of the district court and remands for further proceedings.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 35

### Supreme Court Case No. 17SA110
*Interlocutory Appeal from the District Court*
District Court, City and County of Denver, Case No. 16CR7255
Honorable Andrew P. McCallin, Judge

### Plaintiff-Appellant:

The People of the State of Colorado,

v.

### Defendant-Appellee:

Bobby Taylor.

### Order Reversed
*en banc*
April 30, 2018

**Attorneys for Plaintiff-Appellant:**
Beth McCann, District Attorney, Second Judicial District
Katherine A. Hansen, Deputy District Attorney
Jacob R. Friedberg, Deputy District Attorney
  *Denver, Colorado*

**Attorneys for Defendant-Appellee:**
Douglas K. Wilson, Public Defender
Nate Crowley, Deputy Public Defender
  *Denver, Colorado*

**JUSTICE HART** delivered the Opinion of the Court.

¶1 In this interlocutory appeal taken pursuant to C.A.R. 4.1, we review an order from the Denver District Court suppressing the drug evidence that the defendant dropped on the ground when he was approached by the police on the street. We conclude that the trial court erred in suppressing the evidence because, at the time the defendant dropped the drugs, no seizure had taken place. We therefore reverse the trial court's suppression order and remand for further proceedings.

## I. Facts and Procedural History

¶2 On November 2, 2016, at about 10 p.m., Denver Police Officer Damian Phillips was on bicycle patrol with a few other officers. Officer Phillips was riding his bike on the sidewalk of East Colfax Avenue when he saw two people, one male and one female, walking toward him. Officer Phillips noticed that the two were focused on something that the man held in one hand. Officer Phillips testified at the suppression hearing that, when the woman noticed him approaching, she said something to her companion, and the man closed his fist.

¶3 As the two people continued walking toward Officer Phillips, he stopped and straddled his bike a few feet in front and to the left of the pair and asked the man what he was holding in his hand. At this point, neither the man nor the woman attempted to walk around or away from the officer. The man dropped two rocks from his closed fist onto the ground. Given the prevalence of drug crime in the neighborhood, Officer Phillips suspected—correctly—that the rocks were crack cocaine. He immediately placed the man, Bobby Taylor, into custody. About fifteen seconds elapsed between the

time that Officer Phillips first noticed Mr. Taylor and his companion and the time he put Mr. Taylor in handcuffs.

¶4     Mr. Taylor was subsequently charged with possession of a controlled substance, a class-four drug felony. He filed a motion to suppress both the drugs themselves and Officer Phillips's observation that he had dropped drugs, arguing that he was "seized" without reasonable suspicion the moment that Officer Phillips stopped his bike on the sidewalk.

¶5     The trial court conducted a hearing on the motion to suppress on March 16, 2017, and on May 4, 2017, issued an oral ruling granting the motion to suppress and making findings of fact in support of that ruling. These findings of fact were based on Officer Phillips's testimony and the footage from a body camera that Officer Phillips was wearing that evening. As relevant here, the trial court found that, from the moment Officer Phillips first approached Mr. Taylor, their encounter was nonconsensual. Specifically, the trial court found that this was not a consensual encounter because Mr. Taylor's path was blocked when Officer Phillips straddled his bike on the sidewalk. Based on its review of the body-camera footage, the court found that Mr. Taylor could not have retreated backward and that there was no way for him to get around or to the side of Officer Phillips because of the narrowness of the sidewalk. Additionally, the trial court found that the officer approached the defendant in an aggressive and threatening manner and that he was fully outfitted with a weapon, tasers, and a variety of other equipment. Finally, the trial court found that it was a busy time of the evening on Colfax and that Mr. Taylor and his companion were not doing anything that could

3

reasonably have raised suspicion of criminal activity. Based on these findings, the court determined that Mr. Taylor had been seized during the course of the interaction and that there was no reasonable suspicion to support that seizure. The trial court therefore granted Mr. Taylor's motion to suppress, concluding that the drugs and Officer Phillips's observation of Mr. Taylor dropping them were the fruits of an unlawful stop.

## II. Analysis

¶6     In their interlocutory appeal, the People request that we reverse the court's suppression of the drugs and Officer Phillips's observations. They argue that Mr. Taylor was not seized at the time he abandoned the cocaine and therefore that the cocaine was not the fruit of an unlawful stop. We agree and therefore reverse the trial court's suppression order.

## A. Standard of Review

¶7     In reviewing a suppression order, we ordinarily defer to the trial court's findings of fact, so long as they are supported by competent evidence in the record. See People v. Madrid, 179 P.3d 1010, 1013 (Colo. 2008) (citing People v. Gennings, 808 P.2d 839, 844 (Colo. 1991)). When the controlling facts are not in dispute, however, "the legal effect of those facts constitutes a question of law which is subject to de novo review." Id. (quoting People v. Valdez, 969 P.2d 208, 211 (Colo. 1998)). Where, as here, a portion of the challenged incident is recorded, and there are no disputed facts outside of that recording pertinent to the issue of suppression, we are in essentially the same position as the trial court to determine the question of suppression. See Madrid, 179 P.3d at 1014 (citing People v. Platt, 81 P.3d 1060, 1067 (Colo. 2004)); People v. Al-Yousif, 49 P.3d

4

1165, 1171 (Colo. 2002); People v. Dracon, 884 P.2d 712, 719 (Colo. 1994)). Thus, we may undertake an independent review of the recording to determine whether the evidence was properly suppressed in light of the controlling law. People v. Kutlak, 2016 CO 1, ¶ 13, 364 P.3d 199, 203 (citing Madrid, 179 P.3d at 1014).

## B. Applicable Law

¶8 The United States Constitution offers citizens protections against unreasonable searches and seizures. See U.S. Const. amend. IV; People v. Archuleta, 980 P.2d 509, 512 (Colo. 1999). When the police "seize" a citizen, they must comply with those protections. Not every interaction with the police, however, is a seizure. Instead, there are three categories of encounters that can occur between police and citizens: (1) arrests; (2) investigatory stops; and (3) consensual encounters. See People v. Paynter, 955 P.2d 68, 72 (Colo. 1998). Arrests and investigatory stops are seizures, but "[c]onsensual encounters are not seizures . . . and do not implicate the Fourth Amendment." People v. Marujo, 192 P.3d 1003, 1005 (Colo. 2009). For that reason, "[w]e have observed that 'the boundary between consensual encounters and investigatory stops is crucial because it defines where the protection of the Fourth Amendment begins.'" Id. (quoting People v. Jackson, 39 P.3d 1174, 1179 (Colo. 2002)).

¶9 We have previously recognized that a seizure requires either actual physical force or a show of authority sufficient that an innocent person would feel that submission was required. See People v. McClain, 149 P.3d 787, 789 (Colo. 2007) (quoting California v. Hodari D., 499 U.S. 621, 626 (1991)). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a

5

citizen may [a court] conclude that 'a seizure' has occurred." People v. Fields, 2018 CO 2, ¶ 13, 411 P.3d 661, 665–666 (alteration in original) (quoting People v. Pancoast, 659 P.2d 1348, 1350 (Colo. 1982)).  Police officers do not implicate the protections afforded by the Fourth Amendment by merely asking an individual questions, even when those questions might pertain to criminal conduct.  See People v. Johnson, 865 P.2d 836, 843 (Colo. 1994); People v. Thomas, 839 P.2d 1174, 1178 (Colo. 1992).  "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification."  United States v. Mendenhall, 446 U.S. 544, 554 (1980).

¶10    In assessing whether "a reasonable, innocent person would not feel free to decline the officer's request for information or otherwise terminate" an encounter with a police officer, we have enumerated a nonexclusive list of factors that courts might consider.  Marujo, 192 P.3d at 1007.  As relevant here, these factors include the duration of the encounter, the officer's tone of voice in demanding or requesting information, the threatening or aggressive nature of the officer's approach, and the ability of the citizen to end the encounter.  Id.; see also Jackson, 39 P.3d at 1183–84; Paynter, 955 P.2d at 73–75.

## C.  Application

¶11    The trial court concluded that Mr. Taylor was seized from the moment the officer straddled his bicycle and asked Mr. Taylor what was in his hand.  We disagree.  Based

on our independent review of the body-camera footage, we conclude that Mr. Taylor was not seized until after he dropped the cocaine and was placed in handcuffs.

¶12     The trial court's conclusion that Mr. Taylor had already been seized when he dropped the cocaine on the ground rested substantially on its finding that Officer Phillips had blocked Mr. Taylor from any possible means of exiting the encounter. When Officer Phillips stopped in front and to the left of Mr. Taylor, however, he was not blocking Mr. Taylor's path.  The body-camera footage shows that there were multiple avenues Mr. Taylor could have taken to walk away from or around Officer Phillips.  Mr. Taylor could have turned around and walked the other way.  Mr. Taylor could have continued walking either to the right or to the left of the officer.  The video footage shows that there was room on either side of the officer for Mr. Taylor to have walked past Officer Phillips.  In fact, the video footage captures three people walking along to the left of Mr. Taylor on the sidewalk; their path was not blocked.  The video footage also shows another person walking along to the right of Mr. Taylor on the sidewalk; his path was not blocked.  Additionally, the portion of the sidewalk to the right of the defendant was the same width along which the police officer had previously been riding his bike; there was room on that portion of the sidewalk for Mr. Taylor to keep walking.  The trial court's finding that it would have been impossible for Mr. Taylor to leave is not supported by the footage of the interaction.

¶13     Turning to the other factors that are salient here, we conclude that none of them supports the conclusion that the fifteen seconds between Officer Phillips seeing Mr. Taylor and Mr. Taylor being put in handcuffs was a nonconsensual police–citizen

7

encounter. We cannot agree with the trial court that Officer Phillips was asserting his authority in a manner that rendered the interaction nonconsensual simply because he was on a bike and his uniform included weapons. While an officer displaying a weapon may render a stop nonconsensual, the officer's possession of a weapon alone does not. See Fields, ¶ 19, 411 P.3d at 667; People v. Walters, 249 P.3d 805, 809–10 (Colo. 2011). It is difficult to assess whether the officer's tone was aggressive and threatening during the relevant period of interaction, as the body-camera footage did not include audio recording of the time between Officer Phillips's straddling his bike and Mr. Taylor's arrest. The question he asked—what do you have in your hand?—is not itself a threatening question. Finally, we find the extremely short duration of the interaction between Officer Phillips and Mr. Taylor relevant to our determination that a seizure had not occurred when Mr. Taylor dropped the drugs to the ground.

¶14 For all these reasons, we conclude based on our independent review of the body-camera footage that when Officer Phillips saw Mr. Taylor drop the drugs in his possession to the ground, Mr. Taylor had not yet been seized. Evidence abandoned prior to a seizure is not the fruit of that seizure. See Johnson v. People, 465 P.2d 128, 129 (Colo. 1970); Hodari D., 499 U.S. at 629. For that reason, neither Officer Phillips's observation that Mr. Taylor dropped the drugs nor the drugs themselves should have been suppressed.

## III. Conclusion

¶15 Because Mr. Taylor had not been seized when he dropped the drugs, Mr. Taylor's motion to suppress should have been denied. Accordingly, we reverse the trial

8

court's suppression order, and remand for further proceedings consistent with this opinion.