24CA1313 Peo v Moreno 04-30-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1313
Larimer County District Court No. 23CR5025
Honorable Juan G. Villaseñor, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ismael Jose Hugo Moreno,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE MOULTRIE
Dunn and Harris, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 30, 2026

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney General, Graham Gerhart, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Haley Barton, Deputy State Public Defender, Fort Collins, Colorado, for Defendant-Appellant

¶ 1    Defendant, Ismael Jose Hugo Moreno, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of drug paraphernalia.  We affirm.

## I.    Factual Background

¶ 2    Three police officers, arriving in three separate patrol vehicles, responded to a retail store after an employee reported that a woman inside the store appeared to be shoplifting.  Two of the officers — Michael Olds and Brandon Morgan — remained outside the store near their vehicles while Officer Olds was on the phone with the store's manager.[1]  The manager reported that the woman, who had just been seen taking several items off shelves very quickly, abandoned her shopping basket with a store employee and left the store.  Officer Olds saw the woman then get into the front passenger seat of a car that was parked in the store's parking lot.

¶ 3    Despite the manager telling Officer Olds that the woman hadn't taken any merchandise, Officers Olds and Morgan decided to approach the parked car to ask the woman for identification.

---

[1] The third officer remained inside his patrol car during the relevant portion of the encounter between Officer Olds, Officer Morgan, and Moreno.

Officer Olds approached the driver's side of the car while Officer Morgan approached the passenger's side. Both officers approached the car with their flashlights on with the light shining into the car. Neither officer had any weapons drawn. As Officer Olds approached the driver, later identified as Moreno, put the car into park and rolled down the window a couple inches. The officers stood a few feet away from both sides of the car.

¶ 4    Officer Olds asked Moreno and the woman, "How are you guys doing today?" Moreno responded, "Good." Officer Olds then primarily directed his questions to the woman until he asked who owned the car. Moreno responded that he did. At the same time Officer Olds asked about who owned the car, Officer Morgan asked the woman to step out of the car and called out, "plain view," to Officer Olds because he saw drug paraphernalia on the passenger side floor. Officer Olds then had Moreno step out of the car as well. The officers searched the car and recovered a meth pipe, a bong, and a "tooter."[2]

---

[2] Officer Morgan described a "tooter" as a "small straw-type device that [people] use to consume meth."

## II.    Procedural Background

¶ 5    As relevant here, the prosecution charged Moreno with possession of drug paraphernalia.  Moreno filed a pretrial motion seeking to suppress any evidence from the search of his vehicle because the encounter with the officers wasn't consensual, he was "detained" for purposes of Fourth Amendment protections when the officers approached his car, and the officers didn't have legal justification to detain him as the woman hadn't shoplifted.

¶ 6    After hearing testimony from Officers Olds and Morgan, reviewing the officers' body camera videos, and considering the parties' arguments, the district court denied Moreno's suppression motion.

¶ 7    The court found that Moreno (1) didn't leave when the officers approached his car, voluntarily put his car in park, and rolled down his window; (2) allowed his companion — the woman — to answer Officer Olds's questions; and (3) acted in a manner that showed he could have disregarded Officer Olds's request for information because he didn't answer many of the questions and voluntarily answered the one question that was directed to him about owning the car.

¶ 8      Regarding the officers' actions during the encounter, the court found, among other things, that (1) the officers' flashlights were "quite bright," and they used their flashlights to see into the interior of the car; and (2) when Officer Olds approached the car, he spoke in a voice loud enough for Moreno and the woman to hear him.

¶ 9      Based on these findings, the court concluded that, under the totality of the circumstances, the encounter was consensual. Moreno challenges the district court's suppression ruling. For the reasons discussed below, we affirm.

### III.   Moreno's Fourth Amendment Rights Weren't Implicated Because His Encounter with Officers Was Consensual

#### A.    Applicable Legal Principles

¶ 10     A person's right to be free from unreasonable searches and seizures is protected under both the United States and Colorado Constitutions. U.S. Const. amend. VI; Colo. Const. art. II, § 7; *People v. Brown*, 2022 CO 11, ¶ 15. This constitutional protection is implicated during an encounter with police officers when "an officer terminates or restrains the person's freedom of movement through an intentional act," *Brown*, ¶ 16, which is characterized by "either actual physical force or a show of authority sufficient that

4

an innocent person would feel that submission was required," *People v. Taylor*, 2018 CO 35, ¶ 9.

¶ 11    The supreme court has generally categorized encounters between citizens and police officers for suppression order purposes as arrests, investigatory stops, or consensual encounters. *People v. Marujo*, 192 P.3d 1003, 1006 (Colo. 2008). Arrests and investigatory stops are seizures and implicate Fourth Amendment protections. *Id.* An arrest must be supported by probable cause and an investigatory stop by reasonable suspicion. *People v. Rodriguez*, 945 P.2d 1351, 1359 (Colo. 1997). But consensual encounters aren't considered seizures because they request a person's voluntary cooperation. *Marujo*, 192 P.3d at 1006. Thus, consensual encounters don't trigger Fourth Amendment protections. *Id.*; *see also People v. Castañeda*, 187 P.3d 107, 109 (Colo. 2008) ("A consensual encounter does not require . . . reasonable suspicion because it is not a seizure under the Fourth Amendment.").

¶ 12    To determine whether a defendant's encounter with officers is consensual or a seizure, a court "must consider whether 'a reasonable person would feel free to decline the officers' requests or

otherwise terminate the encounter.'" *Marujo*, 192 P.3d at 1006 (quoting *Florida v. Bostick*, 501 U.S. 429, 436 (1991)); *see also People v. Ganaway*, 2025 CO 25, ¶ 19 ("Fourth Amendment reasonableness inquiries are objective and fact specific."). The supreme court has set forth a nonexhaustive list of ten factors to guide a court's assessment of whether a reasonable, innocent person wouldn't feel free to decline an officer's request or otherwise terminate the encounter. *Marujo*, 192 P.3d at 1007. However, a citizen's "instinctive pressure to cooperate with police officers, without an additional display of force or authority by the officer, . . . does not suffice to transform a consensual encounter into a seizure." *Id.* at 1008.

¶ 13    The court should consider the totality of the circumstances, which includes the *Marujo* factors, when determining "whether the police exercised force or authority to effect a stop[] or whether the police merely sought the voluntary cooperation of a citizen through a consensual encounter." *People v. Paynter*, 955 P.2d 68, 73 (Colo. 1998).

¶ 14    A district court's ruling on a motion to suppress presents a mixed question of fact and law, meaning we defer to the court's

findings of historical fact if they have record support, *Ganaway*, ¶ 14, but we review de novo the court's legal conclusions, *Brown*, ¶ 14. When pertinent circumstances are recorded, "and there are no disputed facts outside the recording controlling the issue of suppression, we are in a similar position as the [district] court to determine whether the evidence should be suppressed. Thus, we may undertake an independent review of the audio or video recording." *People v. Alemayehu*, 2021 COA 69, ¶ 24 (citation modified).

## B.    Analysis

Moreno argues that because his encounter with the officers wasn't consensual, the officers violated his Fourth Amendment rights when they seized him without a warrant and without reasonable suspicion, and the trial court should have suppressed any evidence obtained from his illegal seizure.[3] We aren't persuaded.

---

[3] It's undisputed that the officers lacked reasonable suspicion to contact Moreno. The prosecution abandoned that argument at the suppression hearing, and the district court agreed there was no reasonable suspicion. And because we conclude that the encounter was consensual, we need not consider whether the officers had reasonable suspicion to contact Moreno.

¶ 16     Moreno argues that Officers Olds and Morgan demonstrated a show of authority and intimidation by shining their flashlights into his car, while armed and standing close to the doors on both sides. He further argues that, because of the officers' close proximity to his car, a reasonable person wouldn't have felt free to open the door and walk away or to drive away without the risk of "clipping the officers with the sideview mirrors." He asserts that the officers' actions restrained his liberty.

¶ 17     In support of his argument, Moreno cites *People v. Trujillo*, 773 P.2d 1086, 1090 (Colo. 1989), in which the supreme court concluded that a defendant's encounter with officers wasn't a consensual interview when the officers blocked the defendant's walking path with three police vehicles and shined the vehicles' headlights in the defendant's eyes. The supreme court concluded that "[a]ny reasonable person would have interpreted this conduct by police as requiring the [defendant] to stop" and "not [be] free to disregard the police's request for questioning." *Id.*

¶ 18     The facts and circumstances in *Trujillo* are distinguishable. It's true that both officers used their flashlights as they approached Moreno's car, but that didn't transform the encounter from a

consensual interview to a seizure. It was nighttime during the encounter, so it was reasonable for the officers to use their flashlights. *See United States v. Knights*, 989 F.3d 1281, 1287 (11th Cir. 2021) (rejecting the defendant's argument that an officer's use of a flashlight as he approached the defendant's car communicated a show of authority because it was in the middle of the night). A reasonable, innocent person would still feel free to decline an officer's request or end the encounter notwithstanding the officer's pragmatic use of their flashlight. *See id.* at 1286-87 (concluding a reasonable person would have felt free to leave when in fact the defendant's companion walked away from the encounter).

¶ 19     Furthermore, although Moreno argues that the officers' close proximity to the car prevented him from leaving, he never told them he wanted to leave or asked them to step back from his car so he could end the encounter. *Compare People v. Padgett*, 932 P.2d 810, 813-14 (Colo. 1997) (concluding the defendant's interaction with police officers wasn't a consensual encounter in part because the defendant repeatedly asked if he was being detained and stated that he wanted to go home), *with People v. Thomas*, 839 P.2d 1174, 1178

(Colo. 1992) (holding that an encounter was consensual when the defendant chose not to leave and answered the officer's questions). And even when an exit path is not perfectly clear, the encounter can still be consensual if other circumstances indicate voluntary cooperation. *Ganaway*, ¶ 32 n.6.

¶ 20    When the officers initially arrived at the scene, they didn't activate the sirens or overhead lights on their patrol cars. And neither Officer Olds nor Officer Morgan had their weapons drawn as they approached Moreno's car. *See Marujo*, 192 P.3d at 1007 (relevant factors include the number of officers present, whether the officers showed authority by activating sirens or overhead lights or displaying a weapon, and whether the officers' approach was nonthreatening). Officer Morgan's bodycam shows that Moreno put the car in park and then in reverse. Officer Olds's bodycam then shows Moreno shifting the car from reverse to park as the officer approaches his window. But Officer Olds never ordered or requested that Moreno put the car in park or roll down his window; Moreno did both actions voluntarily. *See People v. Johnson*, 865 P.2d 836, 845 (Colo. 1994) (using the defendant's actions as

evidence of voluntary consent when no officers instructed him to act in the manner that he did).

¶ 21 Moreover, when Officer Olds initiated contact with Moreno, his tone of voice was conversational, and he asked Moreno and the woman how they were doing. *See Marujo*, 192 P.3d at 1007 (the sixth factor is "whether the officer's tone of voice is conversational or whether it indicates that compliance with the request for information might be compelled"). Although Officer Olds then asked the woman for identification, that request didn't turn the encounter into a seizure. *See Paynter*, 955 P.2d at 75. Officer Olds primarily requested information from the woman, but Moreno responded to the one question that was applicable to him — who owned the car. At that point, the interaction had lasted less than a minute. *See Marujo*, 192 P.3d at 1007 (the ninth factor is the duration of the encounter).

¶ 22 The consensual interview ended after that and became an investigatory stop because Officer Morgan saw drug paraphernalia in plain view. But Moreno challenges only the initial encounter.

¶ 23 Our review of the record shows that the court's findings are supported by the evidence. And we conclude that under the totality

of the circumstances, including consideration of the *Marujo* factors, Moreno's interaction with the officers was consensual.  *See id.*

## IV.  Disposition

¶ 24  The judgment is affirmed.

JUDGE DUNN and JUDGE HARRIS concur.